Nos. 24-6139, 24-6140, & 24-6141

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

BLACK EMERGENCY RESPONSE TEAM, *et al.,*
*Plaintiffs*,
and
OKLAHOMA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al*.,
*Plaintiffs-Appellants/Cross Appellees*,
v.
GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General, *et al*.,
*Defendants-Appellees/Cross-Appellants,*
and
UNIVERSITY OF OKLAHOMA BOARD OF REGENTS, *et al*.,
*Defendants*.

BLACK EMERGENCY RESPONSE TEAM, *et al*.,
*Plaintiffs*,
and
OKLAHOMA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, *et al*.,
*Plaintiffs-Appellees,*
JOHN R. BRAUGHT, *et al*.,
*Defendants-Appellants*,
and
GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General, *et al*.,
*Defendants*.

BLACK EMERGENCY RESPONSE TEAM, *et al.*,
*Plaintiffs-Appellees*,
v.
GENTNER DRUMMOND, in his official capacity as Oklahoma Attorney General, *et al.*,
*Defendants-Appellants*,
and
JOHN R. BRAUGHT, *et al.*,
*Defendants.*

---

On Appeal from the United States District Court
for the Western District of Oklahoma
Case No. 5:21-cv-1022-G

---

**_AMICUS CURIAE_ BRIEF OF STATE OF SOUTH CAROLINA AND 17 OTHER STATES IN SUPPORT OF DEFENDANTS-APPELLANTS**

---

ALAN WILSON
*Attorney General*
Thomas T. Hydrick
*Solicitor General*
Joseph D. Spate*
*Deputy Solicitor General*
SOUTH CAROLINA OFFICE OF THE ATTORNEY GENERAL
1000 Assembly St.
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel of Record for *Amicus Curiae* State of South Carolina

(Additional Counsel listed after signature page)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii
INTRODUCTION AND INTEREST OF *AMICI* STATES ........ 1
SUMMARY OF ARGUMENT ........ 2
ARGUMENT ........ 2
I. Facial vagueness challenges are generally disfavored. ........ 2
II. The First Amendment does not guarantee students a right to a curriculum of their choice. ........ 5
CONCLUSION ........ 11
ADDITIONAL COUNSEL ........ 12
CERTIFICATE OF COMPLIANCE ........ 13
CERTIFICATE OF SERVICE ........ 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853, (1982) .................................................................... 8, 9, 12

*Boring v. Buncombe Cnty. Bd. of Educ.*,
136 F.3d 364 (4th Cir. 1998)........................................................................ 10, 12

*Citizens Concerned for Separation of Church and State v. City and County of Denver*,
628 F.2d 1289 (10th Cir. 1980).......................................................................4

*Dodger's Bar & Grill, Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs*,
32 F.3d 1436 (10th Cir. 1994).........................................................................6

*Fabrizius v. Dep't of Agric.*,
129 F.4th 1226 (10th Cir. 2025) .....................................................................6

*Hoffman Estates v. Flipside*,
455 U.S. 489 (1982) .......................................................................................6

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978) ...........................................................................................7

*Lamont v. Postmaster Gen. of United States*.,
381 U.S. 301 (1965) .................................................................................. 8, 12

*Little v. Llano County*,
138 138 F.4th 834 (5th Cir. 2025) .................................................................8, 11

*Martin v. City of Struthers*,
319 U.S. 141 (1943) .......................................................................................8

*Moody v. NetChoice, LLC*,
604 U.S. 707 (2024) ....................................................................................4, 6

*Muir v. Alabama Educ. Television Comm'n*,
688 F.2d 1033 (5th Cir. 1982).........................................................................9

*Oliver v. Arnold*,
19 F.4th 843 (5th Cir. 2021) ...........................................................................9

*Pahls v. Thomas*,
718 F.3d 1210 (10th Cir. 2013).......................................................................8

*Sabri v. United States*,
541 U.S. 600 (2004) .......................................................................................5

*Schleifer by Schleifer v. City of Charlottesville*,
159 F.3d 843 (4th Cir. 1998)...........................................................................3

*Thomas v. Collins*,
323 U.S. 516 (1945) .......................................................................................8

*Toledo Area AFL-CIO Council v. Pizza*,
154 F.3d 307 (6th Cir. 1998)....................8
*United States v. Raines*,
362 U.S. 17 (1960) ....................5
*United States v. Requena*,
980 F.3d 30 (2nd Cir. 2020)....................3
*United States v. Salerno*,
481 U.S. 739 (1987) ....................2
*Walls v. Sanders*,
144 F.4th 995 (8th Cir. 2025) ....................9, 10, 11, 12
*Ward v. Utah*,
398 F.3d 1239 (10th Cir. 2005).................... passim
*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) ....................6

**Statutes**

U.S. Const. amend. I ....................7

**Other Authorities**

HB 1775 ....................2

## INTRODUCTION AND INTEREST OF *AMICI* STATES

The States of South Carolina, Alabama, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Missouri, Montana, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, and Texas ("*Amici* States") respectfully submit this brief as *amici curiae* in support of the Defendants-Appellants. The *Amici* States have a strong interest in the proper interpretation of the First Amendment, especially in the context of determining when the Free Speech Clause is applied to police a State's own speech. The Free Speech Clause has no application—or at a minimum, a very different application than Plaintiffs-Appellants suggest—when States and their educational institutions choose what pedagogical materials to include or exclude from public school classrooms. Reaching the opposite conclusion has grave consequences, not just for the *Amici* States, but also for our constitutional structure.

A contrary recognition risks turning separation of powers on its head and subverting the democratic process. Indeed, democratically accountable officials are the ones who decide course curricula—not unelected federal judges. The latter result would turn the courts into the arbiters and referees of disputes between individual students, parents, authors, and interest groups over what books or topics should or should not be in the States' educational institutions.

## SUMMARY OF ARGUMENT

This Court should uphold Oklahoma's law, HB 1775, in its entirety and reject Plaintiffs-Appellants' arguments on appeal. *Amici* States write to highlight two of the more glaring shortcomings in Plaintiffs-Appellants' arguments. First, Plaintiffs-Appellants have not met the stringent standard necessary to successfully mount a facial vagueness challenge. This Court should continue its practice of applying a "most exacting analysis" to these types of facial claims. *Ward v. Utah*, 398 F.3d 1239, 1247 (10th Cir. 2005).

Second, Plaintiffs-Appellants' right to receive information claim fails right out of the gate. As multiple courts have held, the First Amendment simply does not guarantee students (or educators) a right to a curriculum of their own choice.

## ARGUMENT

### I. Facial vagueness challenges are generally disfavored.

By asserting a facial challenge, Plaintiffs-Appellants have undertaken one of "the most difficult challenge[s] to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Courts generally disfavor facial challenges and are "vigilant in applying a most exacting analysis to such claims." *Ward*, 398 F.3d at 1247. In fact, this disfavor is so great that some courts have suggested they have a "baseline aversion" to facial challenges. *See United States v. Requena*, 980 F.3d 30, 40 (2nd Cir. 2020) (collecting, describing, and synthesizing caselaw on facial challenges).

Such an aversion is warranted for multiple reasons. For one, facial challenges present a constitutional problem. By asking a court to rule on a law in toto, proponents of a facial challenge necessarily invite the court to nullify a law in the "abstract," a "far more aggressive use of judicial power than striking down a discrete and particularized application of it." *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998).

Such an undertaking necessarily reaches the outer limits of a court's Article III power. *See Moody v. NetChoice, LLC*, 604 U.S. 707, 752 (2024) (Thomas, J., concurring in judgment) ("Facial challenges are fundamentally at odds with Article III."). As explained by this Court, "Article III of the Constitution ensures that federal courts are not 'roving commissions assigned to pass judgment on the validity of the nation's laws,' but instead address only specific 'cases' and 'controversies.'" *Ward*, 398 F.3d at 1246 (quoting *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1295 (10th Cir. 1980)).

For another, they present a more practical problem of judicial competency. Or as this Court put it, "facial challenges push the judiciary towards the edge of its traditional purview and expertise." *Ward*, 398 F.3d at 1247. In contrast to a typical case that is adjudicated on an as-applied basis with a robust factual record, "facial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually barebones records." *Sabri v. United States*, 541 U.S. 600, 609

(2004) (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)). Stated differently, "facial challenges ask courts to resolve potentially thorny constitutional questions with little factual background and briefing by a party who may not be affected by the outcome." *NetChoice*, 604 U.S. at 759 (Thomas, J., concurring in judgment).

Given these concerns, courts have imposed a high standard for success in facial challenges on vagueness grounds. In the "preenforcement context," this Court has regularly said that it will uphold a facial challenge "only if the enactment is impermissibly vague in all of its applications." *Dodger's Bar & Grill, Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs*, 32 F.3d 1436, 1443 (10th Cir. 1994) (quoting *Hoffman Estates v. Flipside*, 455 U.S. 489, 495 (1982); *see also Ward*, 398 F.3d at 1251 ("Because [the] vagueness challenge comes in the procedural posture of a declaratory judgment with no pending criminal charges, we may find [the law] unconstitutionally vague only if it is impermissibly vague in all of its applications.").

In other contexts, this Court has suggested that a facial vagueness challenge should be rejected if the challenged law has a "plainly legitimate sweep." *Fabrizius v. Dep't of Agric.*, 129 F.4th 1226, 1238 (10th Cir. 2025) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

In short, facial vagueness challenges are "strong medicine," which require courts to "be vigilant in applying a most exacting analysis to such claims." *Ward*,

398 F.3d at 1247. As ably explained in Defendants-Appellants' brief, Plaintiffs-Appellants have not met this stringent standard.

## II. The First Amendment does not guarantee students a right to a curriculum of their choice.

The district court rightly concluded that the First Amendment does not guarantee students (or educators) a right to receive (or teach) information of their choice. Starting with first principles, the First Amendment, at a high level of generality, protects the right of citizens to speak freely, not the right to compel others—private persons or the government—"to supply information." *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) (plurality op. of Burger, C.J.). The Supreme Court "has never intimated a First Amendment guarantee of a right of access to all sources of information within government control." *Houchins*, 438 U.S. at 9. And neither the First, nor the Fourteenth Amendment "guarantee[s] the public a right of access to [the] information generated or controlled by [the] government." *Id.* at 16 (Stewart, J., concurring).

In this sense, the First Amendment is properly understood as a negative right. Stated differently, it is a limitation or restriction on government action—i.e., the government "shall make no law … abridging the freedom of speech." U.S. Const. amend. I. As one commentator put it, the First Amendment is "only recogniz[ed] [as] a negative right against government interference with the exchange of information by private citizens." Erik Ugland, *Demarcating the Right to Gather News: A*

*Sequential Interpretation of the First Amendment*, 3 DUKE J. CONST. LAW & PUB. POL'Y 113, 140 (2008).

As a result, "[t]he First Amendment does not impose upon public officials an affirmative duty to ensure a balanced presentation of competing viewpoints" given that the "freedom of speech is a negative liberty." *Pahls v. Thomas*, 718 F.3d 1210, 1239 (10th Cir. 2013). And since the First Amendment is not a positive right that requires the government to act, *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 319 (6th Cir. 1998), it follows that the right to receive information and ideas "does not carry with it the concomitant right to have those ideas affirmatively provided at a particular place by the government." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 888, (1982) (Burger, C.J., dissenting).

To the extent the First Amendment guarantees a right to receive information, it is best understood as a restriction on government attempts to prevent a private citizen from receiving another private citizen's speech. *Little v. Llano County*, 138 138 F.4th 834, 836 (5th Cir. 2025); *see also, e.g., Lamont v. Postmaster Gen. of United States*., 381 U.S. 301, 306 (1965) (The government cannot burden someone's right to receive political literature through the mail); *Thomas v. Collins*, 323 U.S. 516, 538 (1945) (holding a court could not bar a union organizer from delivering a speech to company employees); *Martin v. City of Struthers*, 319 U.S. 141, 142–43 (1943) (a city government's prohibition on the distribution of literature violated the

First Amendment based on a person's "right to distribute literature" and another's "right to receive … someone else's speech"). But none of these right-to-receive-information cases concerned the alleged right to receive information from the government. And there is no First Amendment obligation for the government to do so.

The specific context of public schools does not alter this analysis. Or as the Eighth Circuit put it, "[s]tudents do not possess a supercharged right to receive information in public schools that alters these principles." *Walls v. Sanders*, 144 F.4th 995, 1003 (8th Cir. 2025). Thus, the First Amendment right to "receive information" does not require a public-school library to shelve particular books, let alone require the use of curricula that is racially or sexually divisive. *See Muir v. Alabama Educ. Television Comm'n*, 688 F.2d 1033, 1045 n.30 (5th Cir. 1982) (explaining that a "majority" of the Justices in *Pico* agreed "there is no First Amendment obligation upon the State to provide continuing access to particular books"); *see also Oliver v. Arnold*, 19 F.4th 843, 844 (5th Cir. 2021) (Ho., J, concurring in denial of rehearing en banc) ("[F]orcing a public school student to embrace a particular political view serves no legitimate pedagogical function and is forbidden by the First Amendment.").

Accordingly, Plaintiffs-Appellants' First Amendment "right to receive" claim fails because there is no right to receive information from taxpayer-funded public

schools, let alone any right that entitles students, parents, or interest groups to specify what information should be provided. *See Pico*, 457 U.S. at 888 (Burger, C.J., dissenting). In other words, education officials and school boards can remove certain curricula or other pedagogical material from their classrooms and libraries without implicating the First Amendment. *See Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364, 369 (4th Cir. 1998) ("[T]he First Amendment does not require school boards to allow individual teachers in the Nation's elementary and secondary public schools to determine the curriculum for their classrooms consistent with their own personal, political, and other views.") (Luttig, J., concurring).

The most recent Eighth Circuit decision in *Walls v. Sanders* is instructive for this Court's analysis. There, high school students and the Arkansas chapter for the NAACP challenged Arkansas's restriction on indoctrinating students, including with Critical Race Theory, claiming that it violated their Free Speech Clause rights to receive information. *Walls*, 144 F.4th at 1001. Even if the prohibition on indoctrination could be read as prohibiting public school officials and instructors from providing classroom materials and instruction about Critical Race Theory, the Eighth Circuit held that the Free Speech Clause did not require the government to "retain certain materials or instruction in the curriculum of its primary and secondary public schools." *Id*. at 1006. That's because course curriculum is itself "government speech," that "belongs to the government" and the government "gets to control what

it says." *Id.* And "[s]tudents do not possess a supercharged right to receive information in public schools," nor can they "oblige the government to maintain a particular curriculum or offer certain materials in the curriculum based on the Free Speech Clause." *Id.* at 1003 (collecting cases).

The recent en banc decision in *Little v. Llano County* provides critical guidance too. 138 F.4th 834 (5th Cir. 2025). In *Little*, patrons of a Texas county library brought a First Amendment challenge against the librarian and county officials, alleging that the removal of 17 books from the library's collection, based on their treatment of racial and sexual themes, violated the patrons' constitutional right to access information and ideas. *Id*. at 836.

The Fifth Circuit, sitting en banc, rejected this claim, holding that "plaintiffs cannot challenge the library's decisions to remove the 17 [books] by invoking a right to receive information" because there is no constitutional entitlement to access "a book of their choice at taxpayer expense." *Id*. at 848, 850-51. The court's reasoning rested on a distinction between government action that bans or suppresses speech and a governmental library's curatorial decisions regarding its collection. Specifically, the court emphasized that a public library's choice to remove a book does not constitute a prohibition on accessing the information contained therein, as the government was not banning the books outright or preventing individuals from

obtaining them through private means—such as purchasing them or accessing them elsewhere. *Id*. at 850.

*Walls* and *Little* are instructive because the Plaintiffs-Appellants cannot transmogrify the First Amendment to compel state-funded schools to provide the information they desire. Allowing this outcome would undermine our constitutional framework, where the citizens choose state and local officials that establish the educational curricula of this State. It's one thing for the Plaintiffs-Appellants to tell the government it cannot stop them from receiving a certain book or listening to a certain lecture, *see Lamont*, 381 U.S. at 306 (the Postal Service could not regulate receipt of "communist political propaganda"); but it's another thing for a student or an author to tell the government which classes it must teach or which books public school libraries must keep on their shelves. *See Pico*, 457 U.S. at 889 (Burger, C.J., dissenting) ("There is not a hint in the First Amendment, or in any holding of the Supreme Court, of a 'right' to have the government provide continuing access to certain books." (cleaned up)); *see*, *e.g.*, *Boring*, 136 F.3d at 368; *Walls*, 144 F.4th at 1003.

In short, no First Amendment right is infringed by Oklahoma's decision to not subsidize racially or sexually divisive material in its public-school classrooms and libraries.

## CONCLUSION

This Court should rule in favor of the Defendants-Appellants.

Respectfully submitted,

s/ Joseph D. Spate
ALAN WILSON
*Attorney General*
Thomas T. Hydrick
*Solicitor General*
Joseph D. Spate*
*Deputy Solicitor General*
SOUTH CAROLINA OFFICE OF THE ATTORNEY GENERAL
1000 Assembly St.
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel of Record for *Amicus Curiae*
State of South Carolina

October 24, 2025

**ADDITIONAL COUNSEL**

Steve Marshall
Alabama Attorney General

Tim Griffin
Arkansas Attorney General

James Uthmeier
Florida Attorney General

Chris Carr
Georgia Attorney General

Raúl Labrador
Idaho Attorney General

Theodore E. Rokita
Indiana Attorney General

Brenna Bird
Iowa Attorney General

Kris Kobach
Kansas Attorney General

Liz Murrill
Louisiana Attorney General

Catherine Hanaway
Missouri Attorney General

Austin Knudsen
Montana Attorney General

Michael T. Hilgers
Nebraska Attorney General

Drew Wrigley
North Dakota Attorney General

Dave Yost
Ohio Attorney General

Marty Jackley
South Dakota Attorney General

Jonathan Skrmetti
Tennessee Attorney General

Ken Paxton
Texas Attorney General

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because it contains 2,334 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in 14-point Times New Roman, using Microsoft Word.

s/ Joseph D. Spate
Joseph D. Spate

**CERTIFICATE OF SERVICE**

I certify that on October 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

s/ Joseph D. Spate
Joseph D. Spate